UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-60754-CIV-COHN/SELTZER

LARRY ZARRELLA, an individual,
ZARRELLA CONSTRUCTION, INC.,
A Florida Corporation, on Behalf of All
Others Similarly Situated,

    Plaintiffs,

vs.


PACIFIC LIFE INSURANCE COMPANY,

    Defendant.
_____/

<u>ORDER ON PLAINTIFFS' MOTIONS TO COMPEL</u>

THIS CAUSE is before the Court on the following Motions filed by Plaintiffs Larry Zarrella and Zarrella Construction, Inc. (and the responses and reply thereto):

    1.    First Motion to Compel Production of Documents (DE 55); Defendant Pacific Life Insurance Company's Response (DE 61), Plaintiffs' Reply (DE 62), and Defendant's Sur-Reply (DE 64);[1]

    2.    Renewed Motion to Compel Production of Documents and for Sanctions (DE

---

[1] Following the filing of Plaintiffs' First Motion to Compel, the District Court dismissed without prejudice (DE 65) Plaintiffs' Amended Complaint (DE 58). Accordingly, there was no operative pleading before the Court (and this Court, therefore, could not consider the discovery motion), until Plaintiffs filed their Second Amended Complaint (DE 69) on April 12, 2011. As it appears that Plaintiffs' Requests for Production are applicable to the Second Amended Complaint, this Court will not deny the First Motion to Compel as moot, but rather will consider the merits of the Motion. This Court notes, however, that Defendant has filed a Motion to Dismiss Plaintiffs' Second Amended Complaint (DE 74), which remains pending before the District Court.

71) and Defendant's Response in Opposition (DE 87).[2]

The Court being sufficiently advised, it is hereby ORDERED that the Motions are GRANTED in part and DENIED in part for the reasons set forth below.

## BACKGROUND

Plaintiffs Zarrella and Zarrella Construction, Inc. ("Plaintiffs" or collectively, "Zarrella") bring this action against Defendant Pacific Life Insurance Company ("Defendant" or "Pacific Life"), asserting various claims[3] arising out of individual life insurance policies sold to Plaintiffs for use in Zarrella Construction's 412(i) plans. A "412(i)" plan is an employer-sponsored defined benefit plan that provides retirement and death benefits to its participants under § 412(i) of the Internal Revenue Code. 26 U.S.C. § 412(i) (2000) (amended as 26 U.S.C. § 412(e)(3) (2006)). To create a 412(i) plan, an employer establishes a trust to hold the plans assets, and the trust uses tax-deductible employer contributions to purchase and maintain life insurance and/or annuity policies for the plans.

Zarrella alleges that Pacific Life misrepresented that: "(a) the Policies were appropriate for use in funding 412(i) plans; (b) the premiums paid on the policies were fully tax deductible; and (c) the purchaser could pay five annual premiums and then purchase the policy for its suppressed cash value, while taking tax-free loans against the policy." Second Amended Class Action Complaint at ¶ 1 (DE 69). Zarrella further alleges that

---

[2] Plaintiff has not filed a Reply, and the time for doing so has passed.

[3] Plaintiffs' Second Amended Class Action Complaint (DE 69) asserts the following claims: breach of contract (Count I); equitable fraud based on written misrepresentations (Count II); deceit based upon written misrepresentations (Count III); fraud based on oral misrepresentations (Count IV); negligence (Count V), unlawful business acts and practices in violation of California Business and Professions Code (Count VI); and, in the alternative, civil action pursuant to ERISA (Count VII).

Pacific Life "knew, or should have known, that it structured, marketed, and sold Policies posing numerous material tax risks, including disqualification under § 412(i), the loss of tax deductions for plan contributions, Internal Revenue Service (IRS) audits of the 412(i) Plan and the concomitant fees and costs, and severe IRS financial penalties stemming from the failure to qualify under § 412(i)." Id. at ¶ 2. Additionally, Zarrella alleges that the IRS determined that Pacific Life's issuance of the policies under a 412(i) plan constituted an abusive and illegal tax shelter and that, as a result, Zarella suffered substantial damages. Id.

During the litigation, Zarrella served on Pacific Life a First Request for Production of Documents. Pacific Life thereafter served a written response to the Request and produced more than 16,000 pages of documents; it also produced a privilege log and several supplemental privilege logs listing the documents it has withheld under a claim of privilege. Zarrella now moves the Court to compel Pacific Life to produce the privileged documents withheld, arguing that it has waived the attorney-client privilege. Additionally, Zarrella moves the Court to compel Pacific Life to produce documents responsive to Requests Nos. 1, 6, 7, 9, 11, 12, and 19.

<u>WAIVER OF ATTORNEY-CLIENT PRIVILEGE</u>

During 2002, Pacific Life's vice president and in-house tax counsel, Thomas Ronce, requested an opinion letter from the law firm of Scribner Hall & Thompson regarding potential tax consequences of a Pacific Life Flex II insurance policy distributed from a qualified plan. Ronce Decl. at ¶ 7 (DE 61-3). On August 12, 2002, attorney Stephen Dicke of that firm provided such a letter; he rendered an opinion "concerning certain federal income tax consequences under section 402(a) [of the Internal Revenue Code] resulting

3

from the distribution of a PL Flex II life insurance policy . . . from a qualified retirement plan under section 401(a) . . . to the Policy's insured participant" under certain specified circumstances. Opinion Letter (DE 57) (footnote omitted). On February 23, 2011, Pacific Life produced to Zarrella a copy of attorney Dicke's opinion letter. Zarrella believes that Pacific Life also made the opinion letter available to its producers nationwide in connection with the sale of its policies.

Zarrella first argues that the Pacific Life's production of the August 12, 2002 opinion letter waives the attorney-client privilege as to any documents related to Pacific Life's communications with attorney Dicke and those related to the subject of the opinion letter, including documents related to Pacific Life's 412(i) rider and its investigation of its 412(i)-related policies. Zarrella, therefore, moves the Court to compel Pacific Life to produce certain documents withheld under a claim of privilege.

In a diversity case (such as the instant case), Florida law governs the attorney-client privilege. Tolz v. Geico Gen. Ins. Co., No. 08-80663-CIV, 2010 WL 384745, at *3 (S.D. Fla. 2010) (Marra, J.) ("The attorney-client privilege is a matter of substantive law governed by the law of the forum state in federal diversity cases.") (citing Bradt v. Smith, 634 F.2d 796 (5th Cir. 1981)); 1550 Brickell Assocs. v. Q.B.E. Ins. Co., 253 F.R.D. 697, 699 (S.D. Fla. 2008) (Garber, M.J.) ("Attorney-client privilege is governed by state law in diversity actions."). Under Florida law, the holder of the privilege "against the disclosure of a confidential matter or communication waives the privilege if the person . . . voluntarily discloses or makes the communication when he or she does not have a reasonable expectation of privacy, or consents to disclosure of, any significant part of the matter or communication." Fla. Stat. § 90.507; see also Visual Scene, Inc. v. Pilkington Bros., PLC.

508 So.2d 437, 440 (Fla. 3rd DCA 1987) ("In most cases, a voluntary disclosure to a third party of the privileged material, being inconsistent with the confidential relationship, waives the privilege.").

Pacific Life responds that because attorney Dicke's August 12, 2002 opinion letter is not, and never was, protected by the attorney-client privilege, the production of the letter could not have effectuated a waiver of the privilege; thus, the Court should not compel it to produce the privileged documents sought by Zarrella.

Under Florida law, "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client." Fla. Stat. § 90.502(a). "A communication between a lawyer and client is 'confidential' if it is not intended to be disclosed to third persons. . . ." Fla. Stat. § 90.502(1)(c) (emphasis added); see also Martinez v. Univ. of Ill. at Chicago, No. 98 C 5043, 1999 WL 618866, at *1 (N.D. Ill. Aug. 9, 1999) ("Before the [attorney-client] privilege can attach at all, by definition the communication at issue must be 'confidential' – a concept that requires that there be no intention to disclose it to any third person. . . ."); Haskell Co. v. Georgia Pacific Corp., 684 So. 2d 297, 298 (Fla. 5th DCA 1996) ("The attorney-client privilege in Florida . . . applies to the contents of confidential communications between a lawyer and a client made in the rendition of legal services which are not intended to be disclosed to third persons.").

This Court finds that attorney Dicke's August 12, 2002 opinion letter is not an attorney-client privileged communication because Pacific Life and Dicke did not intend that it be kept confidential. Ronce (Pacific Life's vice president and in-house tax counsel) avers

in his declaration that the opinion letter contains no attorney-client privileged designation and that "[i]t was understood that the opinion letter would not be a confidential communication but rather that it could be shared with potential purchasers of Pacific Life policies and their tax and legal advisors to assist them in discussing the issue raised in the opinion letter." Ronce Decl. at ¶¶ 8, 9 (DE 61-3). Indeed, the opinion letter itself expressly states in two places: "[Pacific Life] may make this letter available in its entirety to potential purchasers and users of a Policy, and to their tax and legal advisors, to assist in discussing the issues raised in this letter." Opinion Letter at 2 and 15 (DE 57-1). See Aronson v. McKesson, No. 99-CV 20743, 2005 WL 934331, at *3-5 (N.D. Cal. Mar. 31, 2005) (finding attorney-client communications were not confidential because at the time made an agreement existed providing for disclosure of the communications to a third party).

In addition to arguing that production of the Dicke opinion letter waived the privilege, Zarella argues that Pacific Life waived the attorney-client by Eric Mills deposition testimony concerning a July 16, 2009 memorandum, which Mills authored. Mills is Pacific Life's vice president of the Advanced Designs Unit; he is also a licensed attorney with a specialization in tax law. Mills responsibilities include providing case consultations on the technical uses of life insurance products and providing in-house legal advice to Pacific Life. See Mills Decl. at ¶¶ 2 and 3 (DE 61-1).

Zarrella contends that Mills waived the privilege when he "freely testified regarding his observations to Pacific Life Management." Motion at 6 (DE 55). Zarrella, however, has failed to identify any specific deposition testimony that it contends constitutes such waiver. After reviewing the excerpts of Mills' deposition testimony submitted by the parties (DE 61-2 and 62-1), the Court concludes that Mills did not waive the attorney-client privilege with

respect to his July 16, 2009 memorandum (or any other privileged communication). Mills testified that he drafted the memorandum regarding life insurance policies used to fund qualified plans at the request of management, and he identified the persons with the defendant company to whom it was copied. The remainder of his testimony on this subject sought to clarify when Mills acted as an attorney and when he functioned in his business capacity. Significantly, Mills did not testify as to the substance of any confidential communication. It is the disclosure of the confidential communication itself that waives the privilege; the privilege is not waived by testimony about the facts surrounding the communication. See Int'l Tel. & Tel. Corp. v. United Tel. Co. of Florida, 60 F.R.D. 177, 185-86 (M.D. Fla. 1973) ([T]he client does not waive the privilege by testifying generally in the cause or testifying as to facts which were the subject of consultation with his attorney"); Coates v. Akerman Senterfitt & Edison, P.A., 940 So.2d 504, 511 (Fla. 2nd DCA 2006) (no waiver of privilege by "testifying as to facts that were the subject of the consultation with his or her attorney"); Lee v. Progressive Express Ins. Co., 909 So. 2d 475, 477 (Fla. 4th DCA 2005) (ruling that no waiver occurred where party's deposition testimony "did not disclose any specific discussions or the substance of any communications he had with his attorney.").[4]

Finding that no waiver of the attorney-client privilege occurred by either the

---

[4] Zarrella also contends that Mills' deposition testimony waives the attorney-client privilege as to a confidential email exchange regarding counsel's advice regarding the 412(i) Rider and attached revisions. According to Pacific Life, this email contains confidential advice from in-house counsel Steve Toretto. The record, however, does not reflect any testimony by Mills as to the substance of the privileged communications relating to this email or the subject thereof. Hence, Mills did not waive the privilege with respect to this communication.

7

production of the Dicke opinion letter or by the deposition testimony of Eric Mills, the Court will not require Pacific Life to produce any document withheld under a claim of privilege.

## SPECIFIC REQUESTS

Zarrella additionally moves the Court to compel Pacific Life to produce documents responsive to Requests Nos. 1, 6, 7, 9, 11, 12, and 19. The Court will address each of this Requests in turn.

1.  Request No. 1 seeks "all documents concerning the number of 412(i) plans funded in part by Pacific Life insurance policies, including but not limited to the documents related to the number of Pacific Life insurance policies used to fund §412(i) plans." In response to this Request, Pacific Life objected to this Request on the grounds, *inter alia,* that is overly broad and unduly burdensome. Pacific Life further stated that it would respond in the form of a supplemental interrogatory as it had done by agreement with Zarrella's counsel with respect to an identical Request in another case. In Interrogatory 8, Pacific Life responded that 3,385 Pacific Life policies were used by purchasers to fund 412(i) plans during the relevant time period, 379 of which were not taken, surrendered, or lapsed subsequent to February 13, 2004, and 1,162 of which were sold and issued subsequent to that date; it additionally identified the states in which these policies were sold. Pacific Life additionally stated that it made no premium refunds to policy holders as a result of adverse IRS rulings. In response to the Motion, Pacific Life continues to maintain its burdensome objection to the extent the Request seeks policy files and/or names for each policy holder; it also maintained that such information or documents would not be relevant (prior to class certification). In its Reply, Zarrella represents that it simply wants the internal summary reports (referred to in Pacific Life's corporate representative's

deposition testimony) that Pacific Life apparently relied upon in identifying the number of documents.  The Court agrees that responded to Request No. 1, as framed, would have been unduly burdensome.  However, the Request, as limited by Zarrella, is reasonable.  The record does not reflect whether Pacific Life has produced these internal summary reports.  The Court assumes that it has done so, as Zarrella has not addressed this Request in its Renewed Motion to Compel (unlike the other Requests at issue).  However, if Pacific Life has not already produced the internal summaries from which it calculated the number of policies, it shall do so on or before June 10, 2011.

2.       Request No. 6 seeks [a]ll documents concerning any internal investigation, analysis or review of Pacific Life's 412(i) insurance plans and procedure, practices and policies."  In response, Pacific Life first asserted various objections and then stated, "[s]ubject to its objections, no documents exist."  According to Pacific Life, it responded the way it did because it does not design, establish, or administer "412(i) insurance plans."  Pacific Life believes that Request No. 6 is unclear as to what documents are being sought even if one were to interpret "412(i) insurance plans" to mean Pacific Life's Flex XII insurance policy (that may be used to fund 412(i) plans).  Nonetheless, Pacific Life indicated that it would continue to review its records and make a supplemental production of documents that might arguably be responsive.  In its Reply, Zarrella did not clarify what documents it was seeking; it merely stated that it was requesting a date certain for Pacific Life's production.  In its Renewed Motion to Compel, Zarrella contends that Pacific Life has not produced a single document relating to any due diligence, analysis, review, or investigation it undertook regarding the development of its life insurance products before they were sold.  According to Zarrella, Pacific Life's records custodian, Kit Hensler, testified

in her April 13, 2011 deposition that thousands of e-mails and memorandum are likely responsive to Zarrella's discovery.[5]  Zarrella states that in 2007 Pacific Life instructed Hensler to collect all inter-office communications (including emails) concerning the development of its 412(i) policies, which were marketed as Flex XII and Quest II Policies.

Pacific Life responds that at Hensler's deposition Zarrella's counsel attempted to clarify Request No. 6 in two ways:  (1) "When the February '04 rulings came out was there any effort by management or any of its subordinates to investigate what the salses practices had been and whether a review process had been implemented" and (2) "And the same is true in 2000, late 2001, early 2002, when the rollout of these policies came out, was there no due diligence in-house to vet how these things should be sold? . . . To make sure that they were sold in an appropriate manner, that the risks of the plan and the policies were properly evaluated, some kind of analysis was given prior to the sale or the rollout of the policies?"  From these statements, Pacific Life now believes that Request No. 6 is seeking "documents relating to the vetting of any legal issues that arose prior to the life insurance product rollout, and any impact the 2004 IRS guidance may have had on Pacific Life's marketing of its life insurance products."  Response to Renewed Motion to Compel at 3 (DE 87).  Pacific Life represents that after its March 17, 2011 response (to the First Motion to Compel) indicating it would make a supplemental production of documents arguably responsive to Request No. 6, it continued a comprehensive and laborious review of its records, despite the District Court's March 29, 2011 dismissal of

---

[5] Pacific Life contends that Hensler clarified that the thousands of emails collected were not responsive to any specific request, but rather contained "email chatter" regarding Pacific Life's insurance policies generally.

10

Zarrella's amended complaint in its entirety and despite its pending Motion to Stay Discovery. And immediately after Zarrella's clarification at Hensler's April 13, 2011 deposition, Pacific Life's counsel informed Zarrella's counsel (by email) that Pacific Life was drafting a supplement regarding the documents that Hensler had identified. Nevertheless, Zarrella filed the instant Renewed Motion to Compel and for Sanctions. According to Pacific Life, its search for and review of documents (including thousands of pages of emails) responsive to Zarrella's reformulated verbal request is still ongoing. Pacific Life also states that its document review requires additional attention because the Request seeks documents regarding inherently privileged matters. Pacific Life additionally represents that it has identified documents potentially responsive and has produced a Fifth and a Sixth Supplemental Privilege Log identifying these documents. As Zarrella's counsel has now clarified the documents that Zarrella seeks in response to Request No. 6, and as Pacific Life has agreed to produce such responsive, non-privileged documents, it is ORDERED that Zarrella's First Motion to Compel and Renewed Motion to Compel is GRANTED. On or before June 10, 2011, Pacific Life shall produce all non-privileged documents responsive to Request No. 6, as reformulated by Zarrella's counsel.[6]

3.   Request No. 7 seeks "[a]ll documents concerning any litigation filed by or against Pacific Life related to its 412(i) insurance plans." Request No. 11 seeks "[a]ll documents concerning customer inquires or complaints related to Pacific Life's 412(i)

---

[6] Zarrella has also requested that the Court impose sanctions on Pacific Life for the withholding of documents responsive to Request No. 6 (and the "due diligence" portion of Request No. 19, see infra). The Court has carefully reviewed the parties' arguments and concludes that sanctions here are not warranted. Accordingly Plaintiff's Motion for Sanctions (DE 71) is DENIED.

insurance policies, procedures or practices." And Request No. 12 seeks "[a]ll documents concerning Pacific Life's attempt to address, verify, confirm and investigate customer inquires or complaints related to its 412(i) insurance policies."[7] Pacific Life objected to these Requests on the grounds, *inter alia*, that they are overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Additionally, Pacific Life stated that, subject to its objections, it would respond to the Requests as a supplementary interrogatory, as it did by agreement with Plaintiff's counsel with respect to identical requests in another case. With respect to the relevancy objection, Zarrella argues that these Requests are relevant or likely lead to admissible evidence as to "motive, opportunity, intent, preparation, knowledge, identity or absence of mistake or accident," quoting Federal Rule of Evidence 402. More specifically, Zarrella notes that these documents may demonstrate that Pacific Life had prior notice of the (alleged) defective nature of its plans and policies. The Court agrees that some of the documents sought by these Requests may lead to the discovery of admissible evidence.

Zarrella also argues that Pacific Life's supplemental interrogatories in response are "unsatisfactory, incomplete, and unresponsive and no substitute for the records upon which they were based." Renewed Motion at 9 (DE 71). With respect to Request No. 7 relating to prior litigation, Pacific Life identified 18 other lawsuits, providing the case name, style, and jurisdiction in which each action had been brought; it, however, did not provide any information as to the nature of the pending actions. Zarrella also contends that it has been unable to obtain copies of the core documents for many of these lawsuits – the complaints

---

[7] In their filings, the parties have made their arguments as to Requests Nos. 9, 11, and 12 together; the Court, therefore, will likewise consider them together.

and answers – because they were filed in jurisdictions that do not have public electronic filings. In response, Pacific Life reiterates its argument that production of these documents would be unduly burdensome and notes that "the fact that certain jurisdictions do not have electronic filings does not render these pleading files – which are a matter of public record – inaccessible to, or beyond the reach, of Plaintiffs." Response to Renewed Motion to Compel at 14 (DE 87). The Court does not find that the Request is overbroad in that it involves only 18 lawsuits. However, the Court does find that the Request is overbroad in that it seeks <u>all documents</u> relating to these lawsuits. Undoubtedly, Pacific Life's litigation files would include many documents (such as motions and orders relating to extensions of time and continuances and other administrative matters, motions to dismiss related to the inadequacies of the specific allegations of the respective complaints and discovery-related documents) that would not be relevant to Pacific Life's knowledge of the (alleged) defective nature of its plans and policies. However, because Pacific Life's interrogatory answer failed to identify the nature of these lawsuits, on or before June 10, 2011, Pacific Life shall produce the answers and complaints filed in each of the lawsuits it has identified.

With respect to Requests No. 11 and 12 relating to customer complaints and Pacific Life's investigation thereof, Pacific Life's interrogatory answer merely stated that (subject to its objections) "there were 45 complaints from purchasers relating to Pacific Life insurance policies used to fund 412(i) plans. Pacific Life addressed and investigated each of those complaints." Supplementary Answer to Interrogatory 10 (DE 71-5). The Court finds that this interrogatory answer is not a sufficient response to Requests No. 11 and 12. It does not identify the nature of the complaints nor the investigations conducted. Accordingly, Plaintiffs First Motion to Compel and Renewed Motion to Compel relating to

these Requests is GRANTED. On or before June 10, 2011, Pacific Life shall produce all non-privileged documents responsive to Requests No. 11 and 12.

4. Request No. 9 seeks "[a]ny documents regarding any investigation, report analysis, review or survey conducted by any governmental or regulatory agency/department, whether federal or state, regarding Pacific Life's 412(i) insurance policies, including the Internal Revenue Service, state insurance commissioners or Securities and Exchange Commission." In response to the Request, Pacific Life indicated that it no responsive documents exist. In its Motion, Zarrella argues that Mills' deposition testimony and the description of documents on Pacific Life's privilege log suggest that documents responsive to this Request do exist. In response to the Motion, Pacific Life reiterates that no responsive exists and notes that neither Mills' deposition nor Pacific Life's privilege log states otherwise. The Court agrees and accepts Pacific Life's representation. Accordingly, Zarrella's First Motion to Compel with respect to Request No. 9 is DENIED.[8]

5. Request No. 19 seeks:

> All communications and documents evidencing 1) the accuracy of the statement: "This rider and any Policy covered by it are intended to qualify as part of a tax-qualified retirement plan or arrangement that meets the requirements of Code sec. 401(a) and 412(i) and any regulations relating to it that apply"; and 2) any due diligence performed regarding the above-quoted statement.

In response to this Request, Pacific Life stated that "subject to its objections, [it] will produce non-privileged documents responsive to this Request." In its First Motion to

---

[8] Request No. 9 is not addressed in Zarrella's Renewed Motion to Compel.

Compel, Zarrella sole argument is that Pacific Life waived the attorney-client privilege (or work product privilege) by producing privileged communications with its legal counsel with respect to the accuracy of the statement contained in its policy rider (quoted above). Pacific Life responded that Request No. 19 relates to the 412(i) rider that was prepared with the assistance of its outside counsel Dicke and that it had identified responsive documents on its (original) privilege log.  This Court has ruled that Pacific Life has not waived the attorney-client privilege and that Pacific Life is not required to produce any privileged documents. Accordingly, Zarrella's First Motion to Compel and Renewed Motion to Compel are DENIED with respect to Request No. 19 to the extent it seeks privileged documents.  It is unclear from the parties' filings, however, whether Pacific Life possesses any non-privileged documents responsive to this Request, (particularly with respect to any due diligence performed) and, if so, whether it has already produced such documents.  If Pacific Life has not yet produced all non-privileged documents responsive to Request No. 19, it shall do so on or before June 10, 2011.

      DONE AND ORDERED in Fort Lauderdale, Florida, this 31st day of May 2011.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

All counsel of record