UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-60754-CIV-COHN/SELTZER

LARRY ZARRELLA, an individual,
ZARRELLA CONSTRUCTION, INC.,
a Florida Corporation, on Behalf of All
Others Similarly Situated,

            Plaintiffs,

v.

PACIFIC LIFE INSURANCE COMPANY,

            Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

**THIS CAUSE** is before the Court upon Defendant Pacific Life Insurance

Company's ("Pacific Life's") Motion to Dismiss Plaintiffs' Second Amended Class Action

Complaint [DE 74] ("Motion to Dismiss").  The Court has considered the Motion to

Dismiss, Plaintiffs Larry Zarrella and Zarrella Construction, Inc.'s ("Plaintiffs'") Response

[DE 99], Pacific Life's Reply [DE 112], the record in this case, and is otherwise fully

advised in the premises.

### I.  BACKGROUND

On May 10, 2010, Plaintiffs brought this class action for a variety of claims

arising out of individual life insurance policies that Pacific Life sold to Plaintiffs for use in

Zarrella Construction's 412(i) plans.  Class Action Complaint [DE 1] ("Complaint");

Second Amended Class Action Complaint [DE 69] ("Second Amended Complaint").  A

"412(i)" plan is an employer-sponsored defined benefit plan that provides retirement

and death benefits to its participants under § 412(i) of the Internal Revenue Code.[1]  26

U.S.C. § 412(i) (2000) (amended as 26 U.S.C. § 412(e)(3) (2006)).  To create a 412(i)

plan, an employer establishes a trust to hold the plan's assets, and the trust uses tax-

deductible employer contributions to purchase and maintain life insurance and/or

annuity policies for the plans.  See 26 U.S.C. § 401(a) (2006); 26 C.F.R. § 1.412(i)-

1(b)(2)(i) (2006).

Plaintiffs purchased their policies from Pacific Life in March 2003.  Sec. Am.

Compl. ¶ 23.  Almost one year later, in February of 2004, the Internal Revenue Service

("IRS") issued two Revenue Rulings declaring certain policies as illegal and abusive tax

shelters.  Rev. Rul. 2004-20, 2004-1 C.B. 546, 2004 WL 259195 (Feb. 13, 2004); Rev.

Rul. 2004-21, 2004-1 C.B. 544, 2004 WL 259196 (Feb. 13, 2004).

In 2005, the IRS began a nationwide audit campaign directed at abusive 412(i)

plans.  As part of the audit, the IRS examined Zarrella Construction's retirement plan for

the year ending on December 31, 2003.  Sec. Am. Compl. ¶ 28.  On September 7,

2007, the IRS sent Zarrella Construction a memorandum stating, "[t]he Internal

Revenue Service believes your Plan fails 412(i)(3)."  Id. ¶ 29.  Plaintiffs represent that

as a result of the audit, they have incurred substantial and ongoing fees and expenses.

Id. ¶¶ 28-29.

Plaintiffs allege that Pacific Life misrepresented that "(a) the Policies were

appropriate for use in funding 412(i) plans; (b) the premiums paid on the policies were

---

[1]  The Pension Protection Act of 2006, 120 Stat. 780, 820-26 (2006), amended § 412 of the Internal Revenue Code.  The amendment renumbered § 412(i) as § 412(e)(3), but left the language of the statute unaltered.  In the interest of avoiding confusion, the Court will continue to refer to the pre-amendment version of the statute.

fully tax deductible; and (c) the purchaser could pay five annual premiums and then purchase the policy for its suppressed cash value, while taking tax-free loans against the policy."  Sec. Am. Compl. ¶ 1.  Plaintiffs further allege that Pacific Life "knew, or should have known, that it structured, marketed, and sold Policies posing numerous material tax risks, including disqualification under § 412(i), the loss of tax deductions for plan contributions, Internal Revenue Service (IRS) audits of the 412(i) Plan and the concomitant fees and costs, and severe IRS financial penalties stemming from the failure to qualify under § 412(i)."  Id. at ¶ 2.  Additionally, Plaintiffs allege that the IRS determined that Pacific Life's issuance of the policies under a 412(i) plan constituted an abusive and illegal tax shelter and that, as a result, Plaintiffs suffered substantial damages.  Id.

Based on these facts, the Second Amended Complaint asserts the following claims: breach of contract (Count I); equitable fraud based on written misrepresentations (Count II); deceit based upon written misrepresentations (Count III); fraud based on oral misrepresentations (Count IV); negligence (Count V); unlawful business acts and practices in violation of California Business and Professions Code § 17200 et seq. ("California UCL")  (Count VI); and, in the alternative, civil action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq. ("ERISA") (Count VII).  On April 27, 2011, Pacific Life filed its Motion to Dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss lies for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To state a claim, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of [its] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

At this stage in the litigation, the Court must consider the factual allegations in the Second Amended Complaint as true, and accept all reasonable inferences therefrom.  Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).  Nevertheless, the Court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

4

### III.  ANALYSIS

Pacific Life moves to dismiss the breach of contract claim (Count I) and negligence claim (Count V) for failure to state a claim upon which relief can be granted. Pacific Life also moves to dismiss the fraud-based claims (Counts II, III, IV, VI, and VII) for lack of particularity, and argues that even if these claims meet the particularity requirements, each claim fails as a matter of law.  Further, Pacific Life seeks dismissal of the ERISA claim (Count VII) as untimely and prejudicial.  The Court finds that the breach of contract claim (Count I) and the California UCL claim based on the false advertising predicate violation (Count VI) sufficiently state claims to relief.  All other claims will be dismissed for the reasons discussed below.

### A.  Breach of Contract
### (Count I)

To survive dismissal for a breach of contract claim, a plaintiff must allege "(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." Textron Fin. Corp. v. Lentine Marine, Inc., 630 F. Supp. 2d 1352, 1356 (S.D. Fla. 2009) (citing Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006)).  The parties do not dispute that Plaintiffs have pled the existence of a contract and damages.  Their contention centers on whether Plaintiffs have alleged a breach of the contract.

The Second Amended Complaint alleges that "Pacific Life contracted with Plaintiffs to provide Policies that were *intended* to 'qualify as part of a tax-qualified retirement plan' that met the 'requirements of Code Sec. 401(a) and 412(i) and the related regulations . . .,'" Sec. Am. Compl. ¶ 39 (emphasis added), and that "Plaintiffs

purchased the Policies based on the express representation made in the contract with Pacific Life that the Policies *could* be used to fund 412(i) Plans," id. (emphasis added). The breach allegedly occurred "because the Policies when used to fund 412(i) Plans, did not and *could not* satisfy the requirements of Section 412(i), and related regulations that apply to it." Id. ¶ 40. "Alternatively," Plaintiffs allege, "Pacific Life breached its agreement with Plaintiffs, as logically, Pacific Life *never intended* such compliance when it knew or should have known that its sale of abusive tax shelters would fail to comport with rulings and regulations published by the IRS prior to Plaintiffs' purchase from Pacific Life." Id.

The 412(i) Life Insurance Rider [DE 99-5] ("Rider") states, the "rider and any Policy covered by it are *intended to* qualify as part of a tax-qualified retirement plan or arrangement that meets the requirements of Code Sec. 401(a) and 412(i) and any regulations relating to it that apply." Rider at 2 ¶ 5 (emphasis added). The allegation that Pacific Life never intended such compliance alleges a breach of this agreement. Additionally, the statement that the Policies could not satisfy 412(i) alleges a breach of any express representation that the Policies could be used to fund 412(i) plans. Accordingly, considering the factual allegations as true and accepting all reasonable inferences therefrom, Jackson, 21 F.3d at 1534, Plaintiffs have alleged a breach of contract. Therefore, the breach of contract claim survives dismissal.

## B.  Negligence
### (Count V)

To plead a negligence claim under Florida law, a plaintiff must allege "(1) a legal duty on the defendant to protect the plaintiff from particular injuries; (2) the defendant's

breach of that duty; (3) the plaintiff's injury being actually and proximately caused by the breach, and (4) the plaintiff suffering actual harm from the injury." <u>Zivojinovich v. Barner</u>, 525 F.3d 1059, 1067 (11th Cir. 2008). "Although the issue of whether a defendant exercised reasonable care is generally a jury question, whether a 'duty of care' exists is a question of law to be determined solely by the court." <u>L.A. Fitness Int'l, LLC v. Mayer</u>, 980 So. 2d 550, 557 (Fla. Dist. Ct. App. 2008).

On November 10, 2010, in the Order [DE 27] ("November 10th Order") on Pacific Life's first motion to dismiss, the Court dismissed Plaintiffs' negligence claim for failure to allege that Pacific Life breached a legal duty. Nov. 10th Order at 15-16. On March 29, 2011, in the Order [DE 65] ruling on Pacific Life's second motion to dismiss, the Court again found that Plaintiffs failed to allege that Pacific Life breached a legal duty. Now, in the Second Amended Complaint, Plaintiffs allege the following:

> Pacific Life owed Plaintiffs and members of the Class a duty to structure and design the Policies as suitable funding mechanisms for 412(i) Plans with substantial tax benefits stemming therefrom, as they were purchased by Plaintiffs and the Class under these express representations. Pacific Life also had a duty to inform and warn Plaintiffs of the risks posed by the 412(i) Plans that it structured.

Sec. Am. Compl. ¶ 67. These allegations are virtually identical to those contained in the original Complaint and Amended Complaint. <u>Compare</u> Sec. Am. Compl. ¶ 67 <u>with</u> Compl. ¶ 83 (alleging "a duty to structure and design the Policies as suitable funding mechanisms for 412(i) Plans with substantial tax benefits . . .") <u>and</u> Am. Compl. ¶ 57 (alleging "a duty to structure and design the Policies as suitable funding mechanisms for 412(i) Plans with substantial tax benefits stemming therefrom . . . [and] a duty to inform and warn Plaintiffs of the risks posed by the 412(i) Plans that it structured.").

In the November 10th Order, the Court dismissed the allegation regarding a duty to structure and design policies because:

> In response to the Motion to Dismiss, to support their claim that Pacific Life was under a legal duty, Plaintiffs cite <u>Perez-Encinas v. Amerus Life Insurance Co.</u>, 468 F. Supp. 2d 1127 (N.D. Cal. 2006), a California case that does not speak to Florida law, but rather states that California law recognizes an insurance company's duty to inform an insured of its rights and obligations under the policy, <u>id.</u> at 1136. Regardless, the Complaint alleges that Pacific Life failed to structure and design the policies as suitable for 412(i) plans, <u>see</u> Compl. ¶ 19, not that Pacific Life failed to inform Plaintiffs of their rights and obligations under the policy.

Nov. 10th Order at 15-16. The Amended Complaint nevertheless repled the same allegation, but also added the allegation that Pacific Life had a duty to inform and warn Plaintiffs of the plans' risks. In the March 29th Order, the Court dismissed these allegations because:

> An insurance company is under no duty to advise its insureds regarding the tax consequences of their insurance transactions. <u>See, e.g.</u>, <u>Metropolitan Life Ins. Co. v. Barreto</u>, 178 F. Supp. 2d 745, 750 (S.D. Tex. 2001); <u>Kessler v. Lincoln Nat'l Life Ins. Co.</u>, 620 F. Supp. 282, 284-85 (D.D.C. 1985).

March 29th Order at 17. The Second Amended Complaint includes both prior allegations regarding a duty to structure and design policies and a duty to inform and warn Plaintiffs of the plans' risks.

This time, in response to Pacific Life's argument for dismissal based on failure to allege a legal duty, Plaintiffs argue, "This is contradicted by the express promise in the Rider that the policy 'was in accordance with' relevant tax law." Resp. at 19. In full, the Rider language Plaintiffs reference states, "This rider is an agreement between Pacific Life Insurance Company ("We", "Us", or "Our"), and the trustee ("You" or "Your") of the Benefit Plan (the "Plan") which owns the Policy to which this rider is attached (the

"Policy"), and is in accordance with Internal Revenue Code (the "Code") § 412(i) and Treasury Regulation § 1.412(i)-1(b)(2)(ii)."  Rider at 1.  Plaintiffs infer from this statement that "Pacific Life owed a duty to inform and warn the Plaintiffs of the industry known risks posed by the § 412(i)."  Resp. at 19.  The Court fails to see the connection.

Rather, as in <u>Kessler</u>, where a District of Columbia district court rejected a negligence claim based on an insurer's alleged failure to protect its insured from disadvantageous consequences of a change in tax law, "It may well be that the [insured] made, and failed to adjust to, a bad bargain with the insurance company and that insurance companies and their agents should be obligated to protect policyholders from the consequences of tax law changes.  But federal and state legislatures and local courts are the fora with authority to correct any such failures by life insurance companies."  <u>Kessler</u>, 620 F. Supp. at 284; <u>see also</u> <u>Gibson v. Gov. Emps. Ins. Co.</u>, 162 Cal. App. 3d 441, 448 (Cal. Ct. App. 1984) (finding insurer had no duty beyond terms of the insurance contract, noting, "Notwithstanding plaintiffs' characterization of themselves as 'not insurance experts' and 'unskilled in matters of insurance,' an insured person's initial decision to obtain insurance and the corresponding decision of an insurer to offer coverage remain, at the inception of the contract at least, an arm's length transaction to be governed by traditional standards of freedom to contract.").  Just as the <u>Kessler</u> Court refrained from creating new precedent establishing such a legal duty because "there [wa]s no District of Columbia decision cited as direct or even tangential precedent for such a judicial remedy," <u>id.</u>, here, Plaintiffs cite no Florida

decision as precedent for their allegations regarding Pacific Life's legal duties.[2]  Absent

a legal duty, supported by precedent, of an insurer to structure and design a policy to

conform to tax law or to inform and warn the insured of the tax risks posed by the

policy, this Court must decline to impose such an obligation.  Therefore, the negligence

claim fails.  As this is the third time that Plaintiffs have attempted to plead this claim, the

negligence claim is dismissed with prejudice.[3]

---

[2]  In fact, the Policy Illustrations specifically advise that Pacific Life is <u>not</u> offering tax or legal advice, and "[s]uch advice should be obtained from your own counsel or other tax advisor."  <u>See</u> Policy Illustration at 3 of 12.

[3]  Furthermore, as the Court has explained in both the November 10th and March 29th Orders, the economic loss rule also bars recovery under Plaintiffs' negligence claim.  The economic loss rule precludes recovery for negligence that results only in economic harm.  <u>Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc.</u>, 620 So. 2d 1244, 1246 (Fla. 1993).  The rule bars an action "where a defendant has not committed a breach of duty apart from a breach of contract."  <u>Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.</u>, 891 So. 2d 532, 537 (Fla. 2004).  This is because "[t]he prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort."  <u>Id.</u> at 536.
     The breach of duty in Plaintiffs' negligence action is not independent of the breach of contract.  The negligence claim is based on the allegation that Pacific Life breached a duty to structure and design policies as suitable for 412(i) plans and to inform and warn Plaintiffs of the risk posed by the 412(i) plans.  Sec. Am. Compl. ¶ 67.  The breach of contract claim is based on the allegation that the policies did not and could not satisfy 412(i), nor could Pacific Life have intended the plans to comply with 412(i).  <u>Id.</u> ¶ 40.  As discussed above, the Court has already determined that the breach of contract claim will survive dismissal.  Therefore, even if the negligence claim had stated a claim, the economic loss rule bars recovery.
     Plaintiffs' response to the instant motion to dismiss argues that the economic loss rule does not bar recovery because "[t]his case is akin to a product liability case, as the products were known by Pacific Life in January 2003 to be inherently dangerous . . . [and] inherently dangerous products that cause damage to 'other property' are not barred."  Resp. at 20.  Yet, the "other property damage" that Plaintiffs highlight is the same damage claimed in the breach of contract claim.  <u>Compare</u> Resp. at 20 (the Policy "subjected Mr. Zarrella to an audit with potential criminal liability and associated penalties and fees"), <u>with</u> Sec. Am. Compl. ¶ 41 ("substantial tax liability, penalties, and

## C.  Particularity Requirements
## (Counts II, III, IV, VI, and VII)

Fraud-based claims must meet the heightened pleading requirements of Federal

Rule of Civil Procedure 9(b).[4]  See Fed. R. Civ. P. 9(b).  Under Rule 9(b), a party

_____

the expenses and costs associated with handling IRS audits and all other tax-related matters pertaining to the Policies.").  This is precisely the type of economic harm that the economic loss rule precludes.

[4]  The remaining counts include the following: equitable fraud based on written misrepresentations (Count II); deceit based upon written misrepresentations (Count III); fraud based on oral misrepresentations (Count IV); unlawful business acts and practices in violation of the California UCL (Count VI); and, in the alternative, civil action pursuant to ERISA (Count VII).  The Court recognizes that Rule 9(b) does not always apply to ERISA claims and California UCL claims, but to the extent that these claims are fraud-based, the Court holds the claims to Rule 9(b)'s heightened pleading requirements.
With respect to Rule 9(b)'s application to ERISA claims, "[a]mong the district and circuit courts that have addressed this issue, there is a split of authority, [and] the Eleventh Circuit has never ruled on this discrete issue."  In re Coca-Cola Enters Inc., ERISA Litig., Case No. 1:06-CV-0953 (TWT), 2007 WL 1810211, at *4 (N.D. Ga. June 20, 2007).  Yet, district courts around the country, including within the Eleventh Circuit, have applied Rule 9(b) to ERISA claims when the claims are based on an underlying fraud.  See id. at **6-8 (applying Rule 9(b) to ERISA claim based on fraudulent channel stuffing); see also In re ING Groep, N.V. Erisa Litig., Case No. 1:09–CV–0400, 749 F. Supp. 2d 1338, 1349 (N.D. Ga. March 31, 2010); In re Syncor ERISA Litig., 351 F. Supp. 2d 970, 978 (C.D. Cal. 2004) (applying Rule 9(b) to ERISA action involving affirmative misstatements); Herrington v. Household Int'l, Inc., Case No. 02-C-8257, 2004 WL 719355, at **4, 6 (N.D. Ill. March 31, 2004) (applying Rule 9(b) to fraud allegations in ERISA claim).  Thus, to the extent Plaintiffs' ERISA claim is based on alleged fraud, Rule 9(b) applies here.  Plaintiffs, in responding to Pacific Life's motion to dismiss, do not suggest that their ERISA claim is not based on fraud, nor do they suggest that their ERISA claim otherwise need not meet Rule 9(b)'s particularity requirements.
As for the California UCL claim, Rule 9(b) only applies to the extent the claim is fraud-based.  The California UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  To the extent that Plaintiffs' California UCL claim is based on fraudulent business acts or practices, the Court holds Plaintiffs' California UCL claim to the same heightened pleading standard as the other fraud-based claims, but to the extent the California UCL claim is not fraud-based, it need not meet Rule 9(b)'s requirements.

alleging fraud or mistake "must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). Pursuant to Eleventh Circuit precedent, "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, . . . (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) [it], . . . (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotations and citations omitted). Allegations of date, time, or place satisfy the particularity requirement of Rule 9(b), but alternative means are also available to satisfy the rule. Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1512 (11th Cir. 1988); see also Colonial Penn Ins. Co. v. Value Rent-A-Car, Inc., 814 F. Supp. 1084 (S.D. Fla. 1992) (finding particularity satisfied when plaintiffs provided general time frame, described scheme in detail, and included specific allegations about related correspondence). The purpose of this heightened pleading requirement is to give the defendant fair notice of the claims brought against it, to protect the defendant from harm to its reputation, and to prevent plaintiffs from filing baseless claims and then attempting to discover unknown wrongs. See Holguin v. Celebrity Cruises, Inc., Case Nos. 10-20215-CIV, 10-20545-CIV, 10-20546-CIV, 2010 WL 1837808, at *2 (S.D. Fla. May 4, 2010).

The Second Amended Complaint alleges as follows:

Beginning in or about October 2002, Pacific Life agent and/or employee Roderick Hansen and Pacific Life staff employees located at the Pacific Life South Florida Regional Office, with the assistance of Craig Richman and

12

> Gene Gordon of the Graduate Group, Inc. as the designated Pacific Life producers and/or agents for Plaintiffs, during the course of sales meetings with Plaintiffs in the home and the offices of Plaintiffs in Broward County, Florida made the statements and representations set forth in paragraph 19 hereof.  Said statements and representations were made in the course and scope of their agency with Pacific Life.  At no time during the course of any of the aforesaid meetings, conferences or discussions did any of [] these Pacific Life agents, producers or employees warn that the plans and policies being sold were 'abusive tax shelters' under already existing regulations or rulings of the IRS and that the purchase by Plaintiffs would damage Plaintiffs.

Sec. Am. Compl. ¶ 22.  The statements and representations set forth in paragraph 19

are as follows:

> Pacific Life, through its authorized agents, promoted the sale of the Policies to businesses and their owners, touting the tax and retirement benefits that they would provide.  Specifically, when marketing and selling the Policies, Pacific Life instructed its authorized agents to represent that: (a) the Policies were appropriate for use in funding a 412(i) Plan; (b) the exceedingly high premiums paid on the Policies were tax deductible; and (c) that the purchaser, through the 412(i) Plan, could pay five annual premiums and then purchase the policy for its suppressed cash value and take tax-free loans against the policy.  Pacific Life and its agents did not disclose to Plaintiffs that based upon IRS rulings and regulations issued prior to 2003 such Plans and Policies were abusive tax shelters.

Id. ¶ 19.

Pacific Life seeks to dismiss Plaintiffs' fraud-based claims for failure to plead with

particularity.  Mot. at 5-6. Plaintiffs contend that their Second Amended Complaint

meets Rule 9(b)'s particularity requirements because of the allegations that "(1) oral

misrepresentations were made to Plaintiffs by Roderick Hansen and or his employees

in the Pacific Life South Florida Regional Office; Craig Richman; and Gene Gordon; (2)

said statements were made in October 2002; (3) said statements were made in Mr.

Zarrella's home and office in Broward County to Mr. Zarrella."  Resp. at 19.  The Court

agrees.  Though these allegations are far from a model of particularity, the allegations

13

do provide Pacific Life with fair notice of Plaintiffs' fraud-based claims.

Accordingly, Plaintiffs' Second Amended Complaint meets Rule 9(b)'s particularity requirements, and the fraud-based claims survive dismissal on this basis. The Court goes on to address Pacific Life's additional argument for dismissal as a matter of law of the remaining counts.

### D.  Fraud-Based Claims
### (Counts II, III, IV, VI, and VII)[5]

A fraud claim lies for (1) misrepresentation of material fact; (2) by someone who knew or should have known of the statement's falsity; (3) with intent that the representation would induce another to rely and act on it; and (4) injury suffered in justifiable reliance on the representation.  Fla. Evergreen Foliage v. E.I. Dupont de Nemours & Co., 336 F. Supp. 2d 1239, 1284 (S.D. Fla. 2004), aff'd 470 F.3d 1026 (11th Cir. 2006).  The Court previously dismissed Plaintiffs' fraud-based claims for failure to plead the material fact and reliance elements required for these claims. March 29th Order at 7-11; Nov. 10th Order at 8-11.  Once again, Pacific Life argues that the fraud claims in the Second Amended Complaint fail to plead the material fact and reliance elements.  Mot. at 5-10.

### 1. Material Fact

Fraud must be based on material fact, not on a promise or a prediction of future events.  See First Union Brokerage v. Milos, 717 F. Supp. 1519, 1525 (S.D. Fla. 1989).

---

[5]  Again, the fraud-based analysis only applies to the ERISA claim and California UCL claim to the extent these claims are based on fraud.  To the extent that the ERISA claim and California UCL claim are not based on fraud, the Court addresses these claims individually below.

The November 10th and March 29th Orders held that Pacific Life's fraud-based claims failed because any alleged statements or omissions in March 2003 regarding the validity and tax consequences of the insurance policies used to fund the 412(i) plans were statements of opinions regarding future events, not statements of material fact. March 29th Order at 8-9; Nov. 10th Order at 8-9.

Plaintiffs now suggest that Pacific Life's alleged tax representations were not predictions of future events because the 2004 IRS Revenue Rulings "simply confirmed prior IRS regulations and rulings." See Sec. Am. Compl. ¶ 20. The Second Amended Complaint, like the Amended Complaint and original Complaint, includes the following paragraph:

> Since the 1980's, "springing" cash value policies – such as the Policies sold by Pacific Life – had been under intense scrutiny and proscribed by the IRS under federal tax laws and regulations. In 1989, the IRS issued Notice 89-25 stating that the practice of using the stated cash surrender value as the fair market value of a policy is not appropriate where the total policy reserves represent a much more accurate approximation of the fair market value of the policy. In the 1990's, several insurance companies, including Pacific Life, designed specialized insurance policies under the auspices of § 419(a) of the IRS Code, which were "springing" cash value policies similar to the current Policies at issue in this class action litigation. In the year 2000, the IRS issued Notice 2000-15, which announced that those policies sold to fund § 419(a) benefit plans, identical or similar in design to those sold to Plaintiffs, were designated "listed transactions" and abusive tax shelters.

Sec. Am. Compl. ¶ 17; see also Am. Compl. ¶ 17; Compl. ¶ 17. But, in the Second Amended Complaint, Plaintiffs have changed their heading before this paragraph to "At All Times Prior to 2003 and the Sales Made to Plaintiffs Herein, The IRS Had Made Clear that Such Policies and Plans Violated Applicable Law." Sec. Am. Compl. at 7. Plaintiffs also add allegations that "Pacific Life knew or should have known that the policies and plans sold to Plaintiffs were abusive tax shelters not suitable for their

intended use, and knew or should have known that their sale to Plaintiffs would result in substantial losses and damage to those like Plaintiffs who purchased them." Id. ¶ 18. Additionally, Plaintiffs allege, "Pacific Life and its agents did not disclose to Plaintiffs that based upon IRS rulings and regulations issued prior to 2003 such Plans and Policies were abusive tax shelters." Id. ¶ 19.

As Plaintiffs assert in their Response, they "have substantially amended their current complaint to clarify that the actionable conduct was not an alleged failure to anticipate some favorable tax treatment but that Defendant had actual knowledge that its policies violated existing law when sold contrary to the written and oral representations made to them." Resp. at 13. Plaintiffs concede that if the IRS's 2004 rulings constituted a change in tax law, then the statements that Pacific Life made before those rulings could not have constituted fraud. Id. However, their contention is that the laws did not change, and that Pacific Life's representations were therefore contrary to the laws in existence at the time of the representations. Reading the allegations in the light most favorable to Plaintiffs, as this Court is required to do at this stage, these allegations are sufficient to survive dismissal based on the material fact element required for a fraud claim. However, as described below, Plaintiffs' fraud-based claims nonetheless fail because Plaintiffs have not pled the justifiable reliance element required for fraud claims.

## 2. Justifiable Reliance

As Pacific Life notes, the Court previously dismissed Plaintiffs' fraud-based claims not only because of Plaintiffs' failure to plead the material fact element, but also because of their failure to plead the justifiable reliance element. Mot. at 9. In finding the

16

original Complaint's allegations insufficient on the reliance element, the Court stated as

follows:

> Plaintiffs allege that Pacific Life represented that the policies used to fund the
> 412(i) plans would be valid and subject to favorable future tax
> consequences.  Compl. ¶¶ 49, 55, 60, 66.  The Rider states that the "rider
> and any Policy covered by it are intended to qualify as part of tax-qualified
> retirement plan or arrangement that meets the requirements of Code Sec.
> 401(a) and 412(i)," DE 12-2 (Rider) ¶ 5; Compl. ¶ 29, and the Policy
> Illustration makes clear that "[a]lthough the information contained in this
> illustration is based on [Pacific Life's] understanding of the Internal Revenue
> Code (IRC) and on certain tax and legal assumptions, it is not intended to be
> tax or legal advice.  Such advice should be obtained from your own counsel
> or other tax advisor," DE 12-1 (Policy Illustration and Disclosure Forms) at
> 13.  In other words, Pacific Life intended for the plans to comply with § 412(i)
> when it sold the plans in 2003, but in the written contract, Pacific Life
> specifically did not guarantee any future tax or legal consequences.  As
> Judge Gold stated in another Southern District of Florida case based on
> Pacific Life's 412(i) plans, <u>Espinosa v. Pacific Life Insurance Co.</u>, No. 07-
> 20936, Transcript 34-35 (S.D. Fla. filed on April 6, 2007), "the Pacific Life
> illustrations appear to be inconsistent with the complaint allegations to the
> extent that they plainly and expressly disclaim any promises or future tax
> benefits and require the plan participant to consider the tax treatment with his
> or her attorney or tax advisor," <u>id.</u>   Thus, any reliance on Pacific Life's
> alleged representations regarding future tax consequences was improper
> because Plaintiffs knew not to rely on Pacific Life for tax advice.  <u>See Omni
> Home Fin., Inc. v. Hartford Life & Annuity Ins. Co.</u>, No. 06cv0921, 2008 WL
> 1925248, at **4-5 (S.D. Cal. Apr. 29, 2008) (fraud claims failed when
> disclaimers clearly explained Plaintiffs "should not rely on defendants for
> legal and tax advice").

Nov. 10th Order at 10-11.  The March 29th Order again dismissed all fraud-based

claims, finding that Plaintiffs made no effort to cure the defective allegations regarding

reliance.

The Second Amended Complaint, again, fails to add any new allegations to cure

this deficiency, so Pacific Life once again seeks dismissal.  In their Response, Plaintiffs

contend that their claims should survive dismissal because the reliance issue is not

normally resolved during the pleadings or summary judgment stages of litigation, and

because Mr. Zarrella's Declaration [DE 99-7] demonstrates that he did justifiably rely on Pacific Life's representations.  Resp. at 15-16.

First, even if the reliance element is not normally resolved during the pleading or summary judgment stages of litigation, Plaintiffs are not excused from pleading justifiable reliance as an element of their claims.  Pleading that "Plaintiffs justifiably relied upon the misrepresentations and omissions set forth," Sec. Am. Compl. ¶¶ 49, 56; see also id. ¶ 63, is not enough.  Plaintiffs have an "obligation to provide the 'grounds' of [their] 'entitle[ment] to relief'[, which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 545.

Second, Mr. Zarrella's Declaration does not remedy the pleading deficiency. Plaintiffs argue that the Declaration demonstrates disputed issues of material fact that prevent a resolution of this issue at this stage in the proceedings.  However, the information in Mr. Zarrella's Declaration is not included as allegations in the Second Amended Complaint.  Therefore, because the Second Amended Complaint fails to plead the justifiable reliance element required for a fraud claim, the fraud-based claims are dismissed for failure to state a claim.  As this is the third time Plaintiffs have attempted to plead their fraud-based claims, these claims are dismissed with prejudice. Yet, to the extent that the California UCL claim and ERISA claim are not fraud-based, the Court goes on to address these claims below.

### E. California UCL
### (Count VI)

The California UCL prohibits certain "unfair competition[, meaning] and includ[ing] any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The "unlawful" prong "borrows violations of other laws and makes those unlawful practices actionable under the UCL.  Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong."  Berryman v. Merit Prop. Mgmt., Inc., 62 Cal. Rptr. 3d 177, 185 (Cal. Ct. App. 2007) (citation omitted).  Plaintiffs base their California UCL allegations on predicate violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq*, and False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500.

### 1. CLRA

In the March 29th Order, the Court found that Plaintiffs failed to state a predicate violation under the CLRA.  The Court explained as follows:

> A CLRA claim must relate to a "transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(b); see also Berryman, 152 Cal. Rptr. 3d at 188.  Insurance products are not "goods or services" within the meaning of the CLRA.  See Fairbanks v. Superior Court, 205 P.3d 201, 203 (Cal. 2009); Civil Serv. Emps. Ins. Co. v. Superior Court, 584 P.2d 497, 505 (Cal. 1978) ("insurance is technically neither a 'good' nor a 'service' within the meaning of the act").  Thus, the CLRA claim must fail and therefore cannot form the basis of Plaintiffs' claim for Violation of the California UCL.

March 29th Order at 13.  Plaintiffs have not made any effort to cure this deficiency.  Rather, they argue that this case is distinguishable from Fairbanks and urge the Court to carve out an exception to the rule that insurance products do not qualify as "goods or services" under the CLRA.  See Resp. at 21.  This Court declines to carve an exception

19

to a California law. Thus, because insurance products are not "goods or services" under

the CLRA, and because the subject of this CLRA claim is an insurance policy, the

CLRA claim fails and cannot form the basis of Plaintiffs' California UCL claim.  As this is

the third time Plaintiffs have attempted to plead this claim, their California UCL claim

based on a CLRA predicate violation is dismissed with prejudice.

## 2. FAL

The March 29th Order also found that Plaintiffs failed to state a predicate

violation under the FAL.  The Court explained as follows:

> An FAL claim must be based on a claim that members of the public are likely
> to be deceived by an untrue or misleading advertisement.  McCann v. Lucky
> Money, Inc., 29 Cal. Rptr. 3d 437, 441 (Cal. Ct. App. 2005).  The Amended
> Complaint makes no such allegation.  Rather, it makes the general and
> conclusory statement that Pacific Life disseminated "uniformly deceptive
> advertisements and statements."  Am. Compl. ¶ 64.  Such a vague claim is
> insufficient to allege an FAL claim.

March 29th Order at 13-14.  The FAL allegations in this Second Amended Complaint

are identical to those in the previously dismissed Amended Complaint.  Compare Sec.

Am. Compl. ¶ 74 ("Pacific Life's dissemination of uniformly deceptive advertisements

and statements, including the failure to disclose material facts regarding the nature of

their insurance policies, violates [the FAL]") with Am. Compl. ¶ 64 (same).  Plaintiffs

nonetheless contend that they "have now clearly pointed out that in light of the IRS'

January 2003 pronouncement at the industry convention, any claim that the policies

complied with then pending law were 'deceptive.'"  Resp. at 22.

In light of the above findings that Plaintiffs have sufficiently pled that Pacific Life's

representations constituted misrepresentations of material fact, Plaintiffs have also

sufficiently pled that Pacific Life's advertisements were untrue or misleading.  In

20

essence, if Pacific Life's advertisements disseminated information that was untrue or

misleading in light of the tax laws as they existed at the time of the alleged

advertisements, then such an allegation supports the FAL predicate violation for a

California UCL claim.  Accordingly, reading the allegations in the light most favorable to

Plaintiffs, as this Court is required to do at this stage, Plaintiffs have stated a claim for

violation of the California UCL claim based on a predicate violation under the FAL.[6]

---

[6]  Additionally, at this time, the California UCL claim based on the FAL predicate violation also survives dismissal under the fraud-based claim analysis above.  Both Pacific Life and Plaintiffs have classified the California UCL claim in this case to be fraud-based.  See Mot. at 2 ("The Fraud-Based Claims (Counts II, III, IV, VI, and VII . . .");  Resp. at 12 ("The Fraud-Based Claims (Counts II, III, IV, VI and VIII) . . .").  Nonetheless, the Court is not convinced that the California UCL claim based on the FAL predicate violation is fraud-based.

The UCL prohibits "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with [the FAL]) . . . ."  Cal. Bus. & Prof. Code § 17200 (emphasis added).  "Because the statute is framed in the disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition."  Mckell v. Washington Mutual, Inc., 49 Cal. Rptr. 3d 227, 239 (2006).  As such, a plaintiff alleging a UCL claim based on an FAL predicate claim need not also state a fraud claim.  To state a claim for false advertising under the FAL, a plaintiff need only allege that (1) the statements in the advertisement are untrue or misleading and (2) the defendants knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading.  People v. Lynam, 61 Cal. Rptr. 800, 805 (1967).  Notably, the Court's basis for dismissing the fraud-based claims was Plaintiff's failure to plead the justifiable reliance prong for a fraud claim, but the FAL does not require a plaintiff to plead reliance.  Therefore, despite the parties' apparent agreement that Plaintiff's California UCL claims are fraud-based, it does not appear to the Court that the UCL claim based on the FAL predicate violation falls under the fraud prong of the California UCL.  Accordingly, in an abundance of caution, the Court will not dismiss the California UCL claim based on the FAL predicate violation.  However, to the extent that this claim actually is fraud-based, the claim is dismissed with prejudice for the reasons articulated in the fraud-based analysis above.

**F. ERISA**
**(Count VIII)**

Plaintiffs assert their ERISA claim for the first time in their Second Amended

Complaint.  Pacific Life argues that the claim is procedurally improper because Plaintiffs

did not request leave to add the claim and even if they had requested it, leave should

be denied because the claim is untimely and prejudicial.  Plaintiffs point out that the

March 29th Order did not specifically limit Plaintiffs' ability to assert new claims, see

March 29th Order ("The Amended Class Action Complaint [DE 34] is DISMISSED

without prejudice.  Plaintiffs may file a Second Amended Complaint by April 11,

2011."[7]), and argue that either way, the Court should permit the ERISA claim because it

is based on the same operative facts as the state law claims and because there is

neither prejudice nor bad faith in permitting the claim to proceed.  As described below,

the Court will not allow the ERISA claim to proceed in this action because Plaintiffs

have brought the claim too late and requiring Pacific Life to defend against the ERISA

claim at this time is prejudicial.

The March 29th Order, like the November 10th Order, explained the pleading

defects and allowed Plaintiffs to amend their complaint in accordance with the Court's

ruling.  Though the March 29th Order did not specifically limit Plaintiffs in amending

their pleading, the Order also did not provide Plaintiffs with a carte blanche to begin

their case over again.  Pursuant to Federal Rule of Civil Procedure 15(a), a party may

amend his pleading "by leave of court or by written consent of the adverse party," and

---

[7]  Though the Second Amended Complaint was filed on April 12, 2011, the filing was timely because the Court granted a one-day extension of time.  See Paperless Order [DE 68].

"leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  In construing Rule 15(a), the Supreme Court has held as follows:

> In the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962).  Plaintiffs acknowledge that though federal courts favor liberal pleading, a court may deny leave to amend due to "prejudice to the defendant, bad faith or undue delay on the part of the plaintiff."  Warner v. Alexander Grant & Co., 828 F.2d 1528, 1531 (11th Cir. 1987); Resp. at 23.  The Court cannot permit the ERISA claim to proceed due to undue delay and prejudice to Pacific Life.

First, Plaintiffs delayed in bringing their ERISA claim.  They brought this action on May 10, 2010 and filed an Amended Complaint on December 10, 2010, but they did not mention their ERISA claim until April 12, 2011, almost one year after the action was filed.  Each previous complaint contained only state law claims.  Plaintiffs suggest no reason why they did not bring their ERISA claim in their original pleading or why they have decided to assert the claim this late in the proceeding.  Though this case has not yet passed the motion to dismiss stage, the case has now been pending over a year and discovery has been ongoing, even while the various motions to dismiss have been pending.  Further, the dispositive motions deadline has already passed, and Pacific Life has already filed a Motion for Summary Judgment.

Second, allowing the ERISA claim to proceed at this point prejudices Pacific Life. Plaintiffs define prejudice in their Response as "undue difficulty in prosecuting [or

defending] a lawsuit as a result of a change in tactics or theories on the part of the other party."  Resp. at 23 (citing <u>Deakyne v. Comm'rs of Lewes</u>, 416 F.2d 290, 300 (3d Cir. 1969)).  This is precisely the type of prejudice that the ERISA claim imposes on Pacific Life.  As Pacific Life notes, "the proposed ERISA claim constitutes an entirely new theory of liability and would require Pacific Life to undertake a different defense strategy and tactics and [would] require significant new fact and expert discovery."  Reply at 16.  As such, allowing such a complex claim to proceed at this time would significantly impact Pacific Life's preparation for trial and the course of this entire case.  <u>See</u> <u>Ferguson v. Roberts</u>, 11 F.3d 696, 699 (7th Cir. 1993) (denying leave to amend to add conspiracy, fraud, and RICO charges because these were "new complex and serious charges" that would require additional discovery and impact defendants' trial preparations).  Therefore, the ERISA claim will be dismissed.  This action is too far along to permit any further amendments at this time, but because the Court makes no determinations as to the merits of the ERISA claim, the claim is dismissed without prejudice to refile in a separate action.

## IV.  CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.      Defendant Pacific Life Insurance Company's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint [DE 74] ("Motion to Dismiss") is **GRANTED in part and DENIED in part**;

2.      The following counts are **DISMISSED with prejudice:**

      a.      Count II (Equitable Fraud Based on Written Misrepresentations);

      b.      Count III (Deceit Based Upon Written Misrepresentations);

      c.      Count IV (Fraud Based on Oral Misrepresentations);

      d.      Count V (Negligence);

      e.      Count VI (Unlawful Business Acts and Practices in Violation of California Business and Professions Code based on a predicate violation under California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*);

3.      Count VII (Civil Action Pursuant to ERISA) is **DISMISSED** without prejudice to refile in a separate action;

4.      The Motion to Dismiss [DE 47] is **DENIED** as to Count I (Breach of Contract) and Count VI (Unlawful Business Acts and Practices in Violation of California Business and Professions Code based on a predicate violation under the False Advertising Law, Cal. Bus. & Prof. Code § 17500).  Defendant shall file its Answer to these counts by no later than **August 29, 2011**;

5.      Defendant's Motion to Stay Discovery and Pretrial Deadlines [DE 70] is **DENIED as moot**.

      **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 22nd day of August, 2011.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF