UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-60754-CIV-COHN/SELTZER

LARRY ZARRELLA, an individual,
ZARRELLA CONSTRUCTION, INC.,
A Florida Corporation, on Behalf of All
Others Similarly Situated,

    Plaintiffs,

vs.

PACIFIC LIFE INSURANCE COMPANY,

    Defendant.
_____/

## ORDER ON MOTION FOR INJUNCTIVE AND OTHER RELIEF

THIS CAUSE is before the Court on Plaintiffs' Motion for Injunctive and Other Relief for Violations of Florida Rules of Professional Conduct (DE 124) and the Court being sufficiently advised, it is hereby ORDERED that the Motion is DENIED for the reasons set forth below.

## BACKGROUND

During the course of this litigation, Plaintiff Zarrella's[1] counsel advised Defendant Pacific Life's counsel of record, Enrique D. Arana, that Zarrella wished to take the depositions of certain of Pacific Life's former high-level executives, including the following: Ivan Bishop, former head of product development for the Life Division; Lynn Miller, former vice president and head of the Life Division; and Glenn Schafer, former president of Pacific Life.  Zarrella's counsel asked attorney Arana if he would coordinate the scheduling of the

---

[1] The Court uses the term "Zarrella" to refer to Plaintiffs Larry Zarrella and Zarrella Construction, Inc., collectively.

depositions and whether he would accept service of the subpoenas on the witnesses' behalf. Stephen J. Toretto, Pacific Life's in-house counsel, contacted Bishop, Miller, and Schafer and informed them that Zarrella had requested their depositions. Toretto Dec. at ¶ 4 (DE 139-1). Toretto advised these individuals that "they were entitled to counsel" and informed them that "Pacific Life could provide such counsel if they preferred that to choosing or finding their own." Id. Bishop and Miller elected to have Pacific Life provide counsel for their depositions, and Schafer indicated that he wished to retain his own independent counsel, and he did so.[2] Id. at ¶ 5.

Zarrella deposed Bishop on April 14, 2011; Pacific Life's counsel (Arana) represented Bishop at his deposition. According to Pacific Life, Zarrella's counsel knew "well in advance" that Pacific Life's attorney (Arana) would be representing Bishop at that deposition; Zarrella did not object to such representation or suggest such representation would be improper. On May 18, 2011, attorney Arana notified Zarrella's counsel that he would also be representing Miller at his deposition and that he would accept service of a subpoena on Miller's behalf. Zarrella deposed Miller on June 1, 2011; Pacific Life's attorney (Arana) represented Miller at the deposition. According to Pacific Life, Zarrella again did not object to Arana's representation of the deponent or suggest that such representation was improper.

On or about May 9, 2011, Daragh O'Sullivan, Pacific Life's former vice president of product design for the Life Division, received a telephone call from a member of Zarrella's counsel's firm and subsequently, he received a telephone call from Zarrella's counsel

---

[2] Because Schafer was not represented by Pacific Life's counsel at deposition, his deposition is not pertinent to the instant Motion.

2

(Ronald Weil). O'Sullivan Dec. at ¶ 3 (DE 139-2). O'Sullivan was informed by attorney Weil (or a member of his firm) that his client wished to depose him in a case his client (Zarrella) had brought against Pacific Life; Weil inquired about potential dates for the deposition. Id. According to O'Sullivan, because he was uncomfortable speaking with Zarrella's counsel, he merely informed Weil that he would "check into it' and ended the conversation. Id.[3] O'Sullivan then telephoned attorney Toretto (Pacific Life's in-house counsel) "to seek advice about the call [he] had received from plaintiffs' counsel." Id. at ¶ 4. According to O'Sullivan, attorney Toretto informed him that he had a right to counsel of his choice and that Pacific Life's outside counsel would represent him at his deposition if he desired. Id.; see also Toretto Dec. at 6 (DE 139-1). O'Sullivan responded that he would like Pacific Life's counsel to contact him.

As requested, Pacific Life's attorney Arana did telephone O'Sullivan and indicated that he would represent him at his deposition if O'Sullivan so desired. Arana, however, advised O'Sullivan that he first speak with his current employer's in-house counsel about whether he should accept representation by Pacific Life's attorney. O'Sullivan Dec. at ¶ 5 (DE 139-2). After speaking with his current employer's in-house counsel, O'Sullivan advised Arana that he did want Arana to represent him at the deposition. Id. at ¶ 6.

On or about May 17, 2011, Zarrella issued a subpoena to O'Sullivan; the deposition was scheduled for June 24, 2011.[4] On May 20, 2011, attorney Arana advised Zarrella's

---

[3] O'Sullivan avers that prior to speaking with attorney Weil, he had never heard of this case, nor had he ever spoken to Pacific Life or its attorneys about the case.

[4] After filing the instant Motion, Zarrella filed an Emergency Motion to Delay the Deposition of Daragh O'Sullivan Scheduled for June 24, 2011, until Disposition of Plaintiffs' Motion for Injunction and Other Relief (DE 134), which this Court granted (DE 135).

counsel that he would be representing O'Sullivan at his deposition. According to Pacific Life, Zarrella's counsel again did not object to Arana's representation or suggest it was improper.

On June 15, 2011, Zarrella filed the instant Motion, contending that the representation by defense counsel of Pacific Life's former employees at their depositions violates the Florida Rules of Professional Conduct.

### MOTION FOR INJUNCTIVE AND OTHER RELIEF

Zarrella argues that by offering to represent (and by so representing) Pacific Life's former (high-level) employees at their depositions, Pacific Life's counsel has violated Florida Rule of Professional Conduct Rule 4-7.4(a), which provides in pertinent part:

> **(a) Solicitation.** Except as provided in subdivision (b) of this rule,[5] a lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, in person or otherwise, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain. A lawyer shall not permit employees or agents of the lawyer to solicit on the lawyer's behalf. A lawyer shall not enter into an agreement for, charge, or collect a fee for professional employment obtained in violation of this rule. . . .

Florida Rule of Professional Conduct Rule 4-7.4(a) (footnote added).[6] As recognized by the Supreme Court, attorney anti-solicitation rules are primarily intended to protect the prospective client from overreaching and undue influence. Ohralik v. Ohio State Bar Ass'n,

---

Zarrella, therefore, has not yet deposed O'Sullivan.

[5] Subdivision (b) pertains to an attorney's unsolicited written communications to prospective clients.

[6] Zarrella does not contend, nor does it appear, that the dual representation of Pacific Life and its former employees results in any conflict of interest.

4

436 U.S. 447, 464-65 (1978).

Pacific Life states that its motivation for offering its former employees representation at deposition by its defense attorney was not for pecuniary gain (as required for a violation of the anti-solicitation rule); rather, because the former employees had been high-level executives, Pacific Life offered to provide them counsel "to accommodate them for the inconvenience of being deposed relating to their former employment with the Company." Toretto Dec. at ¶ 4 (DE 139-1). Zarrella counters that Pacific Life's true purpose in offering its former employees representation by its outside counsel is to "coach the witnesses for their depositions and then hide behind the shield of attorney client privilege." Reply at 3 (DE 144).[7]

---

[7] In response to Pacific Life's argument that Zarrella has not produced any evidence that Pacific Life's counsel's representation of the former employees "was unethical and born from alleged improper solicitation," Response at 4 (DE 139), Zarrella submits four pages of the deposition transcript of Lynn Miller (DE 144-2) and four (pertinent) pages of the deposition transcript of Ivan Bishop (DE 144-3); Zarrella contends these excerpts of Miller's and Bishop's testimony show Pacific Life's counsel's improper solicitation and that attorney Arana "coached their testimony."
  At his deposition, Miller freely related the circumstances of Toretto's and attorney Arana's offer to represent him at his deposition (at no cost to him). When Zarrella's counsel asked Miller about the conversation in which Toretto first informed him he was to be deposed, attorney Arana cautioned Miller not to disclose the substance of any attorney-client communications. When asked again about the substance of this conversation, Miller (without objection) testified that Toretto merely notified him that Pacific Life wanted to depose him; Miller denied that Toretto discussed the nature of this lawsuit except to say it was a "product issue, but no detail."
  At his deposition, Bishop testified that he first learned he was to be deposed in a telephone call from attorney Arana several weeks before the deposition date. According to Bishop, he did not request that attorney Arana represent him at the deposition, but he agreed that attorney Arana could do so. Bishop first met with Arana (and another attorney with his firm) the day before the deposition; prior to that meeting, Bishop had never spoken with anyone to prepare for the deposition. Bishop testified that at the meeting, he reviewed documents that attorney Arana had shown him.
  After quoting this deposition testimony in its Reply Memorandum, Zarrella merely states that the "deposition transcripts speak for themselves and no comment is necessary."

Based on the (alleged) violation of Florida's anti-solicitation rule, Zarrella requests that the Court: (1) "enjoin Pacific Life's attempts, both through in-house and through defense counsel, from soliciting as clients former employees of Pacific Life"; (2) "to require that Pacific Life's counsel [ ] notify each such third party witness that they have withdrawn as counsel for each and that the witness may now select his own counsel"; (3) "to permit Plaintiffs' counsel to contact each witness to determine whether he will agree to an informal interview with Plaintiff's counsel"; (4) "to permit those witnesses to again be deposed and/or interviewed by Plaintiffs' . . . counsel"; (5) "to permit the fact finders herein to draw negative inferences from the obstructionist efforts of Pacific Life to impede discovery"; and (6) "for such other and further relief as this Court deems appropriate." Motion at 3 (DE 124).

With respect to the Zarrella's following requests – (1) that the Court permit it to re-depose former employees Ivan Bishop and Lynn Miller; (2) that the Court require Pacific Life's counsel to notify former employees Bishop and Miller that they have withdrawn their representation; (3) that the Court then permit Plaintiffs' counsel to contact Bishop and Miller to inquire whether they will consent to an informal interview; and (4) that the Court instruct the jury that they may draw a negative inference from Pacific Life's counsel's alleged unethical representation of the former employees – such requests are DENIED as

---

Reply at 8. Although the deposition testimony reflects that Pacific Life's counsel offered to represent Miller and Bishop at their deposition (which Pacific Life's counsel has never denied), their deposition testimony does not demonstrate that Pacific Life's offer of representation was unethical, nor does it demonstrate that Pacific Life's counsel improperly "coached" the witnesses or attempted in any way to "shape" their testimony. And Zarrella has not demonstrated (or even contended) that either Bishop or Miller's testimony was untruthful.

6

untimely.

Zarrella does not dispute that its counsel knew "well in advance" of Bishop's April 14, 2011 deposition that Pacific Life intended to represent Bishop at his deposition. Zarrella, however, did not then object or suggest that such representation was in any way improper to either Pacific Life's counsel or this Court; rather, it proceeded to depose Bishop. Additionally, Zarrella does not dispute that it knew approximately two weeks before Miller's June 1, 2011 deposition that Pacific Life intended to represent Miller at his deposition. Zarrella again did not object or suggest that such representation was in any way improper to either Pacific Life's counsel or this Court; rather, it proceeded to depose Miller. Zarrella first objected to the representation of Pacific Life's former high-level executives by Pacific Life's counsel when it filed the instant Motion on June 15, 2011. Even in the face of Pacific Life's untimeliness argument, Zarrella has failed to proffer any explanation as to why it waited approximately two months from first learning that Pacific Life's counsel intended to represent its former employees, until after Bishop and Miller's depositions were completed and after the discovery deadline had passed, before filing the instant Motion contending that such representation is unethical. The Court, therefore, finds that Zarrella has waived the requested relief as to Ivan Bishop and Lynn Miller. Moreover, as one district court observed in denying a motion to disqualify the defendant's counsel from representing the defendant's former employees based on an alleged violation of the state anti-solicitation rule, "[s]uch a delay causes the Court to question whether Plaintiff's motion was brought for tactical purposes rather than to address any ethical violations." Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n, No. CIV-08-1125-C, 2010 WL 1558554, at *2 (W.D. Okla. April 19, 2010).

The Court also declines to disqualify Pacific Life's counsel from representing Daragh O'Sullivan at his deposition because it does not find that Pacific Life's counsel (either its in-house attorney or its outside attorney) improperly solicited O'Sullivan. In his sworn Declaration, O'Sullivan explains that he was first contacted by Zarrella's attorney (or members of his firm) about giving his deposition, but because he was uncomfortable speaking with Zarrella's attorney, he terminated the conversation. O'Sullivan Dec. at ¶ 3 (DE 139-2). According to O'Sullivan, he then called Toretto (who had been Pacific Life's in-house counsel during O'Sullivan's employment with the company) "to seek advice regarding the call [he] had received from plaintiff's counsel." Id. at ¶ 4. In response to O'Sullivan's inquiry, Toretto advised him that he had a right to be represented at his deposition by counsel of his choice, but he also had the option to be represented by Pacific Life's outside counsel. O'Sullivan requested that such outside counsel contact him about representation. Id. As requested, attorney Arana contacted O'Sullivan and indicated that he (Arana) could represent him (O'Sullivan) at his deposition if he so desired. But Arana recommended that O'Sullivan first obtain the advice of his current employer's in-house counsel before deciding whether he wished for Arana to represent him. Id. at ¶ 5. Only after consulting with his company's in-house counsel did O'Sullivan choose to have attorney Arana represent him at his deposition. Id. at ¶ 6. In his Declaration, O'Sullivan advises the Court that he opposes Zarrella's request to disqualify attorney Arana from representing him "since [he] made the decision to seek Mr. Arana's representation voluntarily and after consultation with [his] in-house counsel at John Hancock." Id. at ¶ 7. Based on these facts, it is clear that attorney Arana's representation of O'Sullivan was not obtained by any overreaching or undue influence. O'Sullivan contacted Toretto to seek his

advice and O'Sullivan requested that attorney Arana contact him. Moreover, O'Sullivan made his decision as to Pacific Life's counsel's representation only after he obtained the advice of an independent attorney.

With respect to Zarrella's request that the Court enjoin Pacific Life from representing other former employees at deposition, the request is DENIED as moot. The record does not reflect that Zarrella has subpoenaed any other former employees for deposition (with the exception of O'Sullivan), and the June 6, 2011 discovery deadline has long since passed (and had already passed when Zarrella filed the instant Motion).

DONE AND ORDERED in Fort Lauderdale, Florida, this 22nd day of September 2011.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

All counsel of record